JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Brian Mays appeals from his convictions after a plea of no contest to nine counts of drug-related offenses, with specifications.
 {¶ 2} Appellant challenges his convictions on the basis the trial court improperly denied his pretrial motions. Appellant sought first to suppress evidence, arguing the police detectives lacked both probable cause to arrest him and, thereafter, a valid warrant to search his home. Appellant further sought to compel the state to reveal the identity of the Confidential Informant ("CI") who aided the police detectives in their investigation prior to appellant's arrest.
 {¶ 3} Following a review of the record, however, this court finds appellant's challenge to lack merit. Appellant's convictions, therefore, are affirmed.
 {¶ 4} Appellant's convictions result from an incident that occurred on the afternoon of May 30, 2002. Detectives Joseph Digregorio and Gary Mullins, both of the Cleveland Police Department's Third District Strike Force, arrested a man who had seven rocks of crack cocaine in his possession. After his arrest, the man wanted to put forward some mitigation for his crime; he thus volunteered to become a CI for the detectives. The CI indicated that he could call one of his drug suppliers and set up an immediate delivery.
 {¶ 5} The CI referred to his supplier by his nickname, "Big B or B."[1] He described "B," later identified as appellant, as a "large" bald-headed black male, who stood over six feet in height and weighed over three hundred pounds. He additionally told them B lived in East Cleveland
 {¶ 6} The detectives agreed to the CI's offer. Using his own cellular telephone and with Digregorio seated next to him, the CI placed a call. The CI addressed the person who answered, had a brief conversation, then stated that he was calling because he "wanted two halves." By this, the CI meant he sought two pieces of crack cocaine, each of them approximately 14 grams, or one half-ounce, in weight.
 {¶ 7} After a short pause to listen to appellant's reply, the CI suggested they meet at a place they had used before, viz., the parking lot of the "Golden House Restaurant on East 53rd and St. Clair." The CI asked appellant when he could be there and what he would be driving before disconnecting the call. The CI then informed Digregorio that appellant did not want to discuss weight over the telephone, but agreed to meet the CI at the location "in fifteen minutes" and would be driving "a green Cadillac."
 {¶ 8} Digregorio and Mullins notified their supervisor, Sergeant Michael Connelly, of the arrangement; Connelly quickly "set up the bust" of the CI's supplier. Under Connelly's direction, the detectives drove to the area to park in several different places for purposes of surveillance, with Digregorio by himself in one undercover vehicle, Mullins with the CI in another, and Connelly and two additional detectives in one of two "take down cars."
 {¶ 9} Approximately five minutes before appellant was due to arrive, Mullins told the CI to call the supplier again. Upon concluding the brief call, the CI told Mullins appellant "advised him he was in the area of 90th, 99th and St. Clair and that he would be there in five minutes." Just after Mullins relayed this information to his colleagues, Digregorio observed a green Cadillac pass his location. The driver was a large black man.
 {¶ 10} Within minutes, a green Cadillac drove into the restaurant's lot. The CI's cellular telephone rang; the caller stated he had "parked in the back of the restaurant." At that point, Mullins returned to the police station with the CI while the other detectives made the stop of the heavyset, tall, bald black man, later identified as appellant, who sat in the driver's seat of the green Cadillac parked in the rear lot of the Golden House Restaurant.
 {¶ 11} Connelly patted-down appellant for weapons upon ordering him from the Cadillac. In appellant's pocket, Connelly felt a "big rock" he immediately thought was the contraband ordered by the CI. Although later analysis proved Connelly's belief correct, at the time he was unsure of the weight of the material. He placed appellant under arrest and advised him of his rights before he debated the matter with one of his officers. Appellant thereupon interjected that "it's a half, about 14 grams."
 {¶ 12} While appellant subsequently was transported to the station, the detectives took possession of his keys and conducted an inventory of the Cadillac's contents prior to its tow. In the glove compartment, the officers discovered a bill of sale for the vehicle which indicated appellant had purchased the Cadillac that day, and listed an address for appellant on Ardenall Avenue in East Cleveland
 {¶ 13} Since appellant's set of keys contained one that clearly was a remote key for another vehicle, Connelly directed two of his men to go to the Ardenall Avenue address with it. They later returned, confirming that as they drove slowly by the address, a click of the remote activated the lights of a truck parked in the driveway. The truck carried a vanity plate with the legend "2 Uncle B."
 {¶ 14} Mullins did some additional research during this time. After a perusal of appellant's criminal record, he telephoned appellant's former girlfriend; she confirmed appellant lived in East Cleveland "near Silverman's," which was where Ardenall Avenue also was located. Furthermore, the two cellular telephones confiscated from appellant upon his arrest both contained in their "banner" display the name "Uncle B."
 {¶ 15} Utilizing the information thus gathered, Mullins submitted an affidavit for a search warrant of the lower portion of the house at the East Cleveland address. A common pleas court judge authorized the search warrant. Later that day, the detectives executed it; they discovered at appellant's residence additional amounts of crack cocaine, more than a kilogram of powder cocaine, utensils that retained a cooked cocaine powder coating, a gun, drug paraphernalia, and a large amount of currency.
 {¶ 16} As a result, appellant was indicted on nine counts as follows: two counts of drug trafficking,[2] one with both a major drug offender and a firearm specification; three counts of cocaine possession, one with both a major drug offender and a firearm specification; two counts of possession of criminal tools; one count of having a weapon while under disability; and, one count of illegal manufacture of drugs with a firearm specification. Appellant entered a plea of not guilty and retained counsel to represent him.
 {¶ 17} After some discovery, appellant's counsel filed pretrial motions to suppress evidence along with a motion seeking the disclosure of the identity of the CI. The trial court conducted a hearing on appellant's motions.
 {¶ 18} Appellant's motion for disclosure was denied at the outset of the proceeding; although the trial court indicated its decision could change depending on the evidence, the pronouncement was not thereafter altered. After the detectives testified, the trial court notified the parties they were permitted to submit additional written arguments. Ultimately, at a proceeding held separately for the purpose of disposition, the trial court denied appellant's motions to suppress evidence.
 {¶ 19} Appellant subsequently changed his pleas to the charges to pleas of no contest and was found guilty. The trial court eventually sentenced him to a total of fourteen years of incarceration.
 {¶ 20} Appellant presents the following three assignments of error, which are set forth verbatim, for review:
 {¶ 21} "I. The trial court denied Brian Mays his right to be free from unreasonable searches and seizures when it denied his motion to suppress illegally seized evidence because the police lacked the requisite reasonable suspicion to stop and search him and his car.
 {¶ 22} "II. The trial court erred in failing to suppress the fruits of the search warrant due to lacking sufficient factual support of the affidavit to support the warrant to search the premises.
 {¶ 23} "III. The trial court denied Brian Mays his right to due process as guaranteed by the United States Constitution and the Ohio Constitution by denying his motion to reveal the identity of the informant."
 {¶ 24} Appellant initially argues his original detention by the detectives was improper. He contends they lacked a "reasonable suspicion of criminal activity" which would justify their stop as required by Terryv. Ohio (1968), 392 U.S. 1; therefore, his motion to suppress evidence gained from the investigatory stop wrongly was denied. The record, however, belies this contention.
 {¶ 25} Pursuant to Terry, a police officer may stop and investigate unusual behavior when he reasonably concludes the individual is engaged in criminal activity. In order to justify that conclusion, the officer must present "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id., at 21. The standard for reviewing such police conduct is an objective one that takes into account the totality of the circumstances.State v. Freeman (1980), 64 Ohio St.2d 291. Information received from an informant may provide the officer with reasonable suspicion for an investigatory stop when it is supported by sufficient indicia of reliability or corroborated by independent police work. Alabama v. White
(1990), 496 U.S. 325.
 {¶ 26} In this case, the CI, who just had been arrested for possessing drugs, volunteered to call one of his drug suppliers. The CI described the individual, knew the area in which he lived, and called him by his street name. The CI stated he would ask "B" for an amount of crack cocaine and arrange a meeting place for a transaction to take place shortly. Digregorio sat next to the CI while he made the call. Upon completing it, the CI additionally knew the type of vehicle that the supplier would be driving.
 {¶ 27} When the officers were in place, the CI made another call to find that appellant was nearly there. Appellant matched the CI's description, drove the type and color of vehicle the CI had specified, and arrived at precisely the place at precisely the time arranged. Once there, he telephoned the CI to announce his arrival. From the evidence presented, the trial court correctly concluded the totality of the circumstances gave credibility to the CI's information and thus reasonably warranted the investigatory stop of appellant. State v.Fryerson, Cuyahoga App. No. 82940, 2003-Ohio-6041; cf., State v.Sheppard (1997), 122 Ohio App.3d 358.
 {¶ 28} Appellant's first assignment of error, accordingly, is overruled.
 {¶ 29} Appellant further argues that the affidavit in support of the search warrant was insufficient to establish probable cause, therefore, his motion to suppress the evidence discovered at the Ardenall address wrongly was denied. Once again, the record fails to support his argument.
 {¶ 30} When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the court is limited to ensuring the judge who issued it had a substantial basis for concluding probable cause existed. State v. George (1989),45 Ohio St.3d 325. The issuing judge makes a "practical, common-sense decision whether given all the circumstances set forth in the affidavit" there is a "fair probability" that contraband will be found in the place that is sought to be searched. Id. (Emphasis added.) A significant circumstance is the close relation in time of the officer's knowledge to the request for the issuance of the warrant. State v. Gales (2001),143 Ohio App.3d 55, 63. For that reason, the decision of the issuing judge is given great deference by the reviewing court. State v. George,
supra.
 {¶ 31} In this case, Mullins set forth the circumstances of the recent stop and search of appellant. He additionally set forth the following facts: appellant immediately responded to the CI's request; the CI correctly identified the location of appellant's home; appellant had purchased the Cadillac that day, indicating the Ardenall address as his residence; a key appellant had in his possession when he was stopped activated the lights of a vehicle in the driveway of the home; appellant had only approximately fourteen grams of crack in his possession at the stop; and, in Mullins' experience as a police officer, drug suppliers often kept the major portion of their "assets" concealed in their residence.
 {¶ 32} The trial court's comments indicate the timely nature of the circumstances underlying the warrant was a factor in its determination. Based on all of the circumstances, it correctly concluded the judge's decision to issue the search warrant had a "substantial basis." State v.Richard, Cuyahoga App. No. 78813, 2002-Ohio-9; State v. Richard (Dec. 7, 2000), Cuyahoga App. No. 76796; cf., State v. Gales, supra.
 {¶ 33} Accordingly, appellant's second assignment of error also is overruled.
 {¶ 34} Appellant lastly argues the trial court erred when it refused to force the state to disclose the identity of the CI. Appellant makes this argument in spite of his several declarations in the record that he was well aware of the CI's name; the information appellant actually sought was the CI's address. The record reflects the trial court's refusal was proper.
 {¶ 35} The trial court's decision concerning the disclosure of the identity of a confidential informant will not be reversed absent an abuse of discretion. State v. Feltner (1993), 87 Ohio App.3d 279, 282. The trial court must balance the public interest in protecting the flow of information to law enforcement personnel against the individual's right to prepare a defense. Thus, it must consider the particular circumstances of the case, including the crimes charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors. Rovario v. United States (1957), 353 U.S. 53. The defendant bears the burden of establishing the need for disclosure. State v.Brown, 64 Ohio St.3d 649, 653, 1992-Ohio-19.
 {¶ 36} In this case, the testimony of the CI would not have been necessary for the establishment of any of the vital elements of the crimes for which appellant was charged. This is for the simple reason that the CI's only exchange with appellant was telephonic, rather than face-to-face, and appellant was not charged with having sold crack cocaine to the CI. State v. Richard, 2002-Ohio-9, supra.
 {¶ 37} Moreover, the trial court understood appellant knew who the CI was. Since appellant already had deduced the identity of his betrayer, the trial court was entitled to conclude appellant's only reason to compel further disclosure was for untoward purposes. State v.Dimmings, Cuyahoga App. No. 80149, 2002-Ohio-803.
 {¶ 38} Therefore, the trial court's decision to refuse to compel disclosure did not constitute an abuse of its discretion. State v.Patterson, Cuyahoga App. No. 80409, 2002-Ohio-3100. Appellant's third assignment of error, accordingly, also is overruled.
 {¶ 39} Appellant's convictions and sentences are affirmed.
Judgment affirmed.
James J. Sweeney and Colleen Conway Cooney, JJ., concur.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Quotes are taken from testimony given by a witness at the suppression hearing.
[2] These counts indicated appellant had knowingly prepared crack cocaine and powder cocaine for distribution, having reasonable cause to believe they were intended for sale.