JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant the State of Ohio appeals pursuant to Crim.R. 12(J) from the trial court order that granted the motion to suppress evidence filed by defendant-appellee Daniel McKinney.
 {¶ 2} The state asserts the trial court's order was improper, contending that the police detention of McKinney was reasonable under the circumstances of his association with the co-defendant. This court disagrees. Consequently, the trial court's order is affirmed.
 {¶ 3} Two supervisory Cleveland Police detectives testified at the hearing on McKinney's motion to suppress evidence. First was Gary Kane, who described his investigation of alleged drug-related activity on the afternoon of December 10, 2002.
 {¶ 4} Kane had been approached by a CRI who stated he could obtain a delivery of drugs from a dealer known by the street name of "Nook." "Nook" delivered to an apartment building located at East 75th Street and Chester Avenue. Acting on this information, Kane arranged a type of "buy-bust" operation there with the assistance of officers from another district.
 {¶ 5} Once all the officers were in place, Kane had the CRI telephone Nook. The CRI arranged with Nook to purchase a half-ounce of crack cocaine for $260; Nook indicated he would come to the apartment building in "fifteen minutes."
 {¶ 6} After waiting a half-hour, Kane had the CRI make another call. From the conversation Kane overheard, Nook was delayed by other deliveries, but would arrive at the apartment building shortly. A few minutes later, the CRI's cellular telephone rang with a message from Nook that he was "pulling on the street."
 {¶ 7} The CRI directed Kane's attention to a red SUV which turned into the apartment building's parking lot. Two men were inside the vehicle. The driver stopped, exited, and went to the building's door. The CRI identified the driver as the person he knew as "Nook," later identified as Robert Jordan.
 {¶ 8} When Jordan received no response at the door, he returned to the SUV, waited for a short time, then left. Kane by that time had given his colleagues the vehicle's description, so he thereupon additionally notified them of the direction in which it traveled. The other supervisory detective, Mark Shepard, had sighted it in the lot from his unmarked car and managed to keep it in view.
 {¶ 9} Jordan's vehicle was followed and soon stopped by a patrol car. As the two patrol officers approached the SUV, they were joined by "back up" that consisted of two detectives in an unmarked police car, and, then, additionally, Shepard. Shepard indicated normal police procedure during "felony stops" was to approach suspects with guns drawn. The patrol officers requested both occupants of the SUV to exit the vehicle. Jordan and his passenger, later identified as appellee McKinney, complied.
 {¶ 10} As Shepard described it, Jordan immediately was patted down for officer safety, escorted to a police car in handcuffs, and placed in the rear passenger seat. McKinney then was escorted away from the SUV and "handcuffed behind his back" before he was "patted down briefly." Shepard thereupon began taking photographs of the SUV.
 {¶ 11} As Shepard did so, "a good five to ten minutes" after the initial stop, he heard his colleague Detective Brown ask McKinney an interrogative question regarding his actions. Shepard turned to see Brown push McKinney backward. Brown and his partner "reached down and they retrieved a plastic bag that had suspected cocaine in it" from the ground, right where McKinney had been standing.
 {¶ 12} Upon eventually discovering a pocket in the waistband of McKinneys' pants, Shepard surmised that despite the handcuffs, McKinney somehow had extracted the bag and dropped it. Later laboratory analysis confirmed the plastic bag contained over ten grams of the illegal substance. Shepard finished his photography before he "took both males downtown and booked them."
 {¶ 13} McKinney subsequently was indicted with Jordan on two counts of trafficking in crack cocaine, one count of crack cocaine possession, and one count of possession of criminal tools. Following his arraignment on the charges, McKinney filed a motion to suppress evidence.
 {¶ 14} The state presented the testimony of only Kane and Shepard at the hearing on the motion. Subsequently, the trial court granted McKinney's motion. The trial court determined that although the officers were justified in stopping Jordan's SUV, their detention of McKinney was not justified.
 {¶ 15} The state appeals the trial court's decision with one assignment of error, which is set forth verbatim:
 {¶ 16} "The trial court erred in granting defendant's motion to suppress where the state established that defendant Daniel McKinney was a aiding a abetting in the transport of illegal narcotics."
 {¶ 17} The state argues that, as required by Terry v. Ohio
(1968), 392 U.S. 1, the detectives' testimony provided "specific and articulable facts" which reasonably warranted the intrusion into McKinney's Fourth Amendment rights. Distilled to its essence, however, the state's argument is an assertion that McKinney's detention by the officers was justified by his mere presence in Jordan's vehicle during the "buy-bust" operation. The state's argument is rejected.
 {¶ 18} In State v. Williams (1990), 51 Ohio St.3d 58, 61, the Ohio Supreme Court stated that an officer's brief investigative stop of an individual made pursuant to Terry is warranted only when it is "justified by some objective
manifestation that the person stopped is, or is about to be,engaged in criminal activity." (Emphasis added.) The officer's actions are viewed in light of the totality of the surrounding circumstances. State v. Freeman (1980), 64 Ohio St.2d 21, paragraph one of the syllabus.
 {¶ 19} In this case, the totality of the circumstances does not support the actions of the five police officers who detained McKinney. Rather, the information supplied by the CRI and Kane justified an investigative stop of only Jordan. State v. Mays,
Cuyahoga App. No. 82474, 2003-Ohio-6949.
 {¶ 20} From Kane's testimony, it can be inferred the CRI neither named, telephoned, nor expected McKinney, nor made even a suggestion that "Nook" had a cohort in his illegal activity. Kane further indicated that while Jordan went to the apartment building's door, McKinney simply remained in the SUV. Finally, no evidence was presented that drugs were discovered upon the stop of Jordan. Thus, nothing supports the state's assertion that McKinney was an "aider and abettor" of any criminal acts. Statev. Shepard (1997), 122 Ohio App.3d 358.
 {¶ 21} Additionally, neither Kane nor Shepard testified he observed McKinney engage in any "suspicious or criminal behavior," even inside the vehicle, before or as it was stopped. Consequently, the officers' decision to detain McKinney after the stop lacked any reasonable justification. State v. Manley,
Cuyahoga App. No. 80256, 2002-Ohio-3903; State v. Martin (Nov. 9, 2000), Cuyahoga App. No. 77593; State v. Brock (Dec. 9, 1999), Cuyahoga App. No. 75168; State v. Fanning (1990),70 Ohio App.3d 648; cf., State v. Bobo (1988), 37 Ohio St.3d 177;State v. Curry (1994), 95 Ohio App.3d 93.
 {¶ 22} In concluding the trial court correctly determined McKinney's detention was unreasonable in this case, this court also finds two additional omissions from Shepard's testimony to be significant. Specifically, Shepard failed: 1) to specify the point at which McKinney was arrested; and, 2) to indicate any suspicious object was felt in McKinney's clothing during the pat-down search.
 {¶ 23} It seems patently unreasonable to secure a passenger of a vehicle, who has not been observed engaging in any
suspicious behavior, in a pair of handcuffs before conducting a pat-down search for weapons. State v. Dabney, Belmont App. No. 02 BE 31, 2003-Ohio-5141, citing State v. Lozada,92 Ohio St.3d 74, 2001-Ohio-149. Moreover, the pat-down search must have been glaringly defective, since the officers obviously felt no suspicious objects on McKinney, or in his waistband, during it.
 {¶ 24} Also significant in this case is the defense request to include Detective Brown's narrative report of the incident as evidence. Brown was not called as a witness by the prosecution, and his report contains several statements that contradict Shepard's account. This discrepancy further supports the trial court's decision to grant McKinney's motion.
 {¶ 25} For the foregoing reasons, the trial court properly granted McKinney's motion to suppress evidence. State v. Jones,
Cuyahoga App. No. 80685, 2002-Ohio-4785; cf., State v. Evans,67 Ohio St.3d 405, 1993-Ohio-186.
 {¶ 26} Accordingly, the state's assignment of error is overruled.
 {¶ 27} The trial court's order is affirmed.
It is ordered that appellant recover of appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J. and Gallagher, J. Concurs (see separateconcurring opinion).