JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Nadah Simmons, appeals the trial court's denial of his motion to suppress. Defendant's arrest and the search of his car resulted from a sting that the police arranged with a confidential informant.
 {¶ 2} Instead of communicating by phone, according to the detective's testimony, defendant had established a sophisticated code paging system he used to communicate with his customers. Each customer was assigned a three digit number. Each location for a deal to take place was assigned a number: the Executive Den had a number, Home Depot had another, and a local video store yet another. When a customer wanted to order drugs, she would enter her personal number, then a star, then the amount of drugs she was requesting in grams, then a star, then the location she wanted to meet at, then a star, then the time of the meeting and a star. She would send this identical message twice. In response, defendant would page her back with the same number sequence she had sent him, followed by either 111 if there was deal or 000 if he could not complete the deal. The customer would then send defendant the same numerical sequence to verify that she had received his page.
 {¶ 3} The detective involved in the case testified that the informant told him that she did not know defendant's name, that she never spoke to him on the telephone, and that during the drug deals, which always took place in one of the three parking lots, neither of them ever got out of their cars.
 {¶ 4} Using the informant's pager and assigned identification number, the detective ordered four ounces of heroin and indicated that the informant would meet him at the Executive Den near Lakeshore and E. 185th street at 11:15 p.m. The informant showed the police the parking lot where she would meet defendant and described the types of vehicles he drove.
 {¶ 5} On the day of the planned buy, the police used a limousine to hide in the parking lot of the Executive Den and had a car with drug sniffing dogs close by but out of sight. They searched the informant and her car to verify that no drugs were present, wired her to tape her conversations, and gave her the "buy" money. Defendant arrived in the parking lot at 11:16 p.m., pulled his car next to the informant's, and told her he wanted to move the deal to number 2, which was the parking lot of a Home Depot. Before she could respond, the police swooped in, took him out of his car, handcuffed him, and placed him in the back seat of the cruiser. Defendant was not aware that all conversations in the cruiser were being tape recorded.
 {¶ 6} The detective then got into the cruiser with defendant and, informing him of his Miranda rights, stated, "You have the right to remain silent, anything you say can be used against you in court, you have a right to an attorney, if you can't afford an attorney one will be provided to you free of cost. Do you understand your rights?" Transcript of tape of conversation in police cruiser on October 8, 2004. After defendant indicated that he understood, the detective proceeded to attempt to persuade defendant to cooperate with the police. Defendant did not make any commitment to cooperate.
 {¶ 7} After he finished questioning defendant, the detective put the informant in the backseat of the cruiser with defendant. Despite the detective's warning to the informant to refrain from saying anything while in the cruiser, she nonetheless engaged in conversation with defendant. Because he did not know at this point that the informant was the source of the police's information, defendant engaged in conversation with her and implied that he had been dealing heroin for twelve years.
 {¶ 8} While defendant was in the back seat of the cruiser, the police dog sniffed his car. The dog indicated a slight smell of drugs near the trunk and the door of the car, but when the police directed him into the car, the dog vigorously signaled that drugs were located in the console. The police opened the console and found two rubber gloves containing heroin. One of those gloves contained the exact amount of heroin the informant had ordered. Defendant was arrested. After the court denied his motion to suppress, he pled no contest to charges of offering or selling a controlled substance, heroin, in an amount equal to or exceeding 50 grams but less than 250 grams; drug trafficking of the same controlled substance referenced in count one; possession of heroin in the same amount; and possession of criminal tools. The court found him guilty and sentenced him to nine years on counts one, two, and three and six months on the criminal tools count. All sentences were ordered to be served concurrently.
 {¶ 9} Defendant appealed, stating thirteen assignments of error, the first of which follows:
I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO SUPPRESS.
 {¶ 10} Defendant argues that the police did not have a reasonable suspicion to justify stopping his car on private property. In the seminal case on search and seizure, Terry v.Ohio (1968), 392 U.S. 1, 20-21, the United States Supreme Court held:
In order to assess the reasonableness of [the police officer's] conduct as a general proposition, it is necessary "first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen," for there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." Camara v. Municipal Court, 387 U.S. 523, 534-535,536-537 (1967). And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.
Id. at 20-21.
 {¶ 11} Defendant argues that the police lacked sufficient specific and articulable facts to justify the intrusion of stopping and placing him in the backseat of the police cruiser. We disagree.
 {¶ 12} In an analogous case, this court found that a police stop and subsequent detention was warranted when a confidential informant arranged a buy with the defendant, and the informant was able to provide the make and model of the dealer's car, the location of the buy, and the time of the buy. State v. Mays,
Cuyahoga App. No. 82474, 2003-Ohio-6949, ¶¶ 26-27. In Mays,
although the confidential informant knew the dealer's nickname, "B," and the informant in the case at bar did not know the dealer's name, the informant in the case at bar had more than sufficient knowledge of defendant's complicated communication code, different vehicles, and locations of drug deals to support a reasonable suspicion of illegal drug dealing on the part of the police.
"* * * in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * [W]ould the facts available to the officer at the moment of the seizure of the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"
State v. Freeman (1980), 64 Ohio St.2d 291, 294, quotingTerry at 21-22, internal citations omitted. Given the information the informant provided, along with the fact that defendant arrived at the time and place the informant predicted and in one of the vehicles the informant predicted, we find that the police had a reasonable suspicion that defendant was in possession of drugs, that is, in the process of committing a crime.
 {¶ 13} Defendant also argues that the police violated his Fourth Amendment rights when they conducted a police dog sniff search of the vehicle. The United States Supreme Court has held, however, that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Illinois v. Caballes (2005),543 U.S. 405, 410. The police stop was lawful; so too was the subsequent drug sniff.
 {¶ 14} The trial court did not err in finding both the stop and detention of defendant and the dog sniff of his car warranted by a reasonable suspicion by the police. Accordingly, this assignment of error is overruled.
 {¶ 15} For his second assignment of error, defendant states:
II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO SUPPRESS AFTER HE REQUESTED COUNSEL.
 {¶ 16} Defendant claims the detective continued to question him after he asked for counsel in violation of his constitutional rights. The state argues that, although defendant referenced counsel in his conversation with them, he did not expressly request counsel at that time.
 {¶ 17} It is undisputed that, following Miranda v. Arizona
(1966), 384 U.S. 436, a suspect must be informed of his rights prior to any police questioning. Further, failure to permit a defendant to be represented by counsel at questioning violates his constitutional right to representation. State v. Williams
(2003), 99 Ohio St.3d 439, ¶ 31. This Sixth Amendment right to counsel does not attach, however, until formal charges are initiated. Id.
 {¶ 18} In the case at bar, charges against defendant had not yet been initiated, so only his Fifth Amendment rights are at issue. To invoke this Fifth Amendment right to counsel, defendant was required to unambiguously invoke his right to counsel.Williams at ¶ 32, citing Davis v. United States (1994),512 U.S. 452.
Specifically, the Davis court declined to "require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney."Davis, 512 U.S. at 459, 114 S.Ct. 2350, 129 L.Ed.2d 362. Instead, Davis holds that "the suspect must unambiguously request counsel. * * * He must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." (Emphasis added.) Id.
Williams, ¶ 32. In Williams, the Ohio Supreme Court also noted decisions from other jurisdictions that required defendants to make a specific request for counsel in order to invokeMiranda rights. For example, in Dormire v. Wilkinson, the 8th Circuit held:
Supreme Court precedent does not require the cessation of questioning "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel." Davis, 512 U.S. at 459
* * * We conclude that the state court was not unreasonable in determining that Wilkinson's question "Could I call my lawyer?" was not an unambiguous request for counsel. Other courts have come to the same conclusion when presented with similarly worded statements. See, e.g., Diaz v. Senkowski, 76 F.3d 61, 65 (2d Cir. 1996) (" I think I want a lawyer" not unequivocal invocation of right to counsel); Lord v. Duckworth, 29 F.3d 1216, 1221
(7th Cir. 1994) ("I can't afford a lawyer but is there anyway I can get one?" not a clear request for counsel).
Dormire v. Wilkinson (C.A. 8, 2001), 249 F.3d 801, 805.
 {¶ 19} A review of the transcribed and recorded conversation between the detective and defendant in the police cruiser shows no clear request for counsel. After giving him his Miranda
rights, the detective then asked defendant, "do you mind if I talk to you? Ask you some questions?" Defendant answered, "Yeah, you can." The detective then, attempting to convince defendant to cooperate with the police, said, "if you cooperate with me I can help lessen that time that you're facing, because you are facing mandatory time, whether it's your first offense or not, the level of drugs we have on you * * *." The detective then said that he would "like to ah, to move to the next level. Alright? Sound like something you might be interested in?" The defendant replied, "umm, hmm with a lawyer and all that stuff, too." The detective replied, "pardon me?" Defendant again stated, "with a lawyer andall that stuff there (unintelligible)." The detective responded, "with your lawyer present, is that what, I'm sorry — I didn't hear." Tr. 73. Defendant replied, "I'm going to have to get alawyer and all that stuff there, I mean —" The detective interjected, "oh, you have [sic] want to get a lawyer." Tr. 73. According to the transcript submitted by the state,[1]
Defendant then said, "what, do yah, what do yah, you say, what am I charged with?" (Emphasis added.) Instead of answering the question directly, the detective proceeded to tell defendant that the potential deal for leniency by cooperating had a limited time frame because once people learned that defendant had been arrested, he would no longer be able to help the police. No further reference to a lawyer ensued.
 {¶ 20} A reference to a future need to obtain counsel does not equate to an unambiguous request for counsel prior to police questioning. Defendant was speaking hypothetically about having counsel if he decided to cooperate with the police before the detective continued questioning him. Each time defendant reiterated a need for the lawyer he was speaking in the future and in response to the detective's initial inquiry asking whether defendant "might be interested in" cooperating. At no point did he actually request an attorney. Nor did defendant actually agree to cooperate, the question of cooperation having been posed to defendant as merely a possibility, which the word "might" indicates.
 {¶ 21} The trial court did not err, therefore, in ruling that defendant's Fifth Amendment right to counsel had not been violated. Accordingly, this assignment of error is overruled.
 {¶ 22} For his third assignment of error, defendant states:
III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO SUPPRESS WHEN HE HAD NO [sic] BEEN FULLY ADVISED OF HIS CONSTITUTIONAL RIGHTS.
 {¶ 23} Defendant claims that at the time he was questioned in the police cruiser he was not advised that "he had a right to the presence of an attorney" or that he had "the right to stop questioning at any time." Appellant's Brief at 16. He further asserts that the detective did not advise him that "he had the right to an appointed attorney." Appellant's Brief at 16. He argues that these failures to advise him violated his Sixth Amendment right as stated in Miranda, supra.
 {¶ 24} As discussed in the previous assignment of error, the Sixth Amendment right to counsel does not attach until a defendant has been formally charged. Nonetheless, he does have a Fifth Amendment right to be informed of his right to the presence of counsel prior to police questioning. This right to be informed, however, does not mean the police are required to recite the rights verbatim. In State v. Foust,105 Ohio St.3d 137 2004-Ohio-7006, the court noted that "Miranda v. Arizona
(1966), 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires that before questioning a suspect in custody, law-enforcement officials must inform the suspect (1) that he or she has the right to remain silent, (2) that his or her statements may be used against him or her at trial, (3) that he or she has the right to have an attorney present during questioning, and (4) that if he or she cannot afford an attorney, one will be appointed." Id. at ¶ 67. The Ohio Supreme Court has held that "Miranda does not require a police officer to ask the defendant whether he wants an attorney. He need only inform the accused, as was done here, that the accused has a right to a retained or appointed attorney." State v. Edwards (1976),49 Ohio St.2d 31, 39, reversed in part on other grounds in Lockettv. Ohio (1978), 438 U.S. 586.
 {¶ 25} In the case at bar, the warning defendant claims was deficient consisted of the following: "you have the right to remain silent, anything you say can be used against you in court, you have a right to an attorney, if you can't afford an attorney one will be provided to you free of cost. Do you understand your rights?"
 {¶ 26} Defendant errs when he asserts that he was not advised that he had the right to the presence of an attorney. The detective clearly told him he had that right. Further, the detective also told defendant that he had the right to an attorney "free of cost." Although this wording differs from "appointed counsel," it is an unambiguous statement of the right to appointed counsel. The final alleged omission from theMiranda warning was the lack of a statement that defendant could stop the questioning at any time. The Foust Court did not list this alleged right, however, as one of the rights required for an acceptable Miranda warning. We decline to add requirements to the Ohio Supreme Court's analysis of defendants'Miranda rights.
 {¶ 27} We conclude the trial court did not err in refusing to suppress the statements defendant made to the detective in the police cruiser. Accordingly, this assignment of error is overruled.
 {¶ 28} For his fourth assignment of error, defendant states:
IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO SUPPRESS STATEMENTS MADE TO A GOVERNMENT INFORMANT WHO WAS PLACED IN THE SAME VEHICLE WITH DEFENDANT.
 {¶ 29} Defendant argues that his Sixth Amendment right to counsel before questioning was violated when he was placed in the cruiser with the informant without being warned that the informant was there to elicit incriminating statements from him. He cites us to cases involving jail house snitches. The state counters by pointing out that, although defendant had been arrested at this point, formal charges had not been filed against him yet. The state argues that his pre-charge status distinguishes his case from those involving jail house snitches. As the state notes, the Ohio Supreme Court has ruled: "`The Sixth Amendment right to counsel does not attach until after the initiation of formal charges.'" State v. Williams (2003),99 Ohio St.3d 439, 444, quoting Moran v. Burbine (1986),475 U.S. 412, 431. Because he had not yet been formally charged when he was sitting in the back of the cruiser, defendant's Sixth Amendment right to counsel had not yet attached.
 {¶ 30} Further, there is no expectation of privacy in a police cruiser.
"A person does not have a reasonable or legitimate expectation of privacy in statements made to a companion while seated in a police car. * * * A marked police car is owned and operated by the state for the express purpose of ferreting out crime. It is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects. The general public has no reason to frequent the back seat of a patrol car, or to believe that it is a sanctuary for private discussions. * * * In other words, allowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society." (Citations omitted).
State v. Jones (Mar. 2, 2000), Cuyahoga App. No. 75843, 2000 Ohio App. LEXIS 768, at *8, quoting U.S. v. Clark (1994),22 F.3d 799.
 {¶ 31} Because defendant had no expectation of privacy in the police cruiser, the trial court did not err in admitting his statements to the informant. Accordingly, this assignment of error is overruled.
 {¶ 32} For his fifth assignment of error, defendant states:
V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO MAKE FINDINGS IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
 {¶ 33} Defendant argues that the trial court erred by failing to make specific findings of fact when it denied his motion to suppress. As he notes, Crim.R. 12(F) states in pertinent part: "Where factual issues are involved in determining a motion, the court shall state its essential findings on the record." The purpose of findings of fact and conclusions of law following a suppression hearing, however, is to provide a basis for appellate review. Defendant fails to show any prejudice resulting from the lack of findings of fact. This court has consistently held "* * * that a defendant is not prejudiced by a trial court's failure to comply with a defendant's request for findings of fact on the court's suppression ruling where the record provides an appellate court with a sufficient basis to review a defendant's assignments of error." State v. Harris, Cuyahoga App. No. 85270,2005-Ohio-2192, ¶ 18, citations omitted.
 {¶ 34} The record before us contains the transcript of the proceedings as well as CD copies of the taped conversations. In the case at bar, as in Harris, "we think the record sufficient to allow full review of the suppression issues." State v. Waddy
(1992), 63 Ohio St.3d 424, 443. Additionally, defendant fails to point to any facts that were in dispute or how he was prejudiced by the absence of findings of fact. This assignment of error, therefore, lacks merit.
 {¶ 35} For his sixth assignment of error, defendant states:
VI. DEFENDANT WAS DENIED HIS RIGHT TO CONFRONTATION AND CROSS-EXAMINATION WHEN THE COURT ADMITTED STATEMENTS MADE BY AN UNIDENTIFIED INFORMANT TO THE POLICE.
 {¶ 36} Defendant complains that he was not able to question the informant at the suppression hearing and that the detective's testimony was inadmissible hearsay. He is correct in noting that the detective's testimony concerning the information the informant gave him was hearsay. Nonetheless, "[i]t is well established that `at a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.' Maumee v. Weisner (1999),87 Ohio St.3d 295, 298, 720 N.E.2d 507, quoting United States v.Raddatz (1980), 447 U.S. 667, 679, 65 L.Ed.2d 424,100 S.Ct. 2406." State v. Jordan, Cuyahoga App. No. 80851, 2002-Ohio-5086, ¶ 29.
 {¶ 37} Because the rules of evidence do not strictly apply at a suppression hearing, the trial court did not err in allowing the detective to testify about what the informant had told him. Accordingly, this assignment of error is without merit.
 {¶ 38} For his seventh assignment of error, defendant states:
VII. DEFENDANT WAS DENIED HIS RIGHT TO CONFRONTATION AND CROSS-EXAMINATION WHEN THE COURT LIMITED CROSS-EXAMINATION OF THE DETECTIVE CONCERNING THE INFORMANT.
 {¶ 39} When he was cross-examining the detective at the suppression hearing, defense counsel tried to obtain information about the informant. The trial court sustained the state's objections to these questions.
 {¶ 40} Defendant argues that he was denied his right to cross-examination when the court prevented him from learning the identity or clues to the identity of the confidential informant. He fails, however, to show that he was prejudiced by not having this information. It is well settled that "the burden rests with defendant to establish the need for disclosure" of the identity of a confidential informant. State v. Parsons (1989),64 Ohio App.3d 63, 69.
 {¶ 41} Defendant correctly notes that he has a right to cross-examine the state's witnesses in a suppression hearing, and "limitations on this right must be justified by weighty considerations." Id. at 67. One of those considerations justifying the limitation, however, is "the government's privilege to withhold the identity of persons who furnish information concerning criminal conduct." Id.
 {¶ 42} Strong public policy reasons exist for maintaining the confidentiality of an informant. As the Ohio Supreme Court explained:
* * * resolution of the question of whether the identity of an informant must be disclosed involves the balancing of competing interests. With respect to the criminal defendant, the fairness of the trial of an accused depends, in large part, on the ability of the defendant to confront his accusers. A fundamental component of the right to confront one's accusers is the opportunity to cross-examine the witnesses against him. Pointerv. Texas (1965), 380 U.S. 400. Despite the importance of the right of confrontation, under certain circumstances that right will be subject to the state's right to preserve the anonymity of informants. The underlying rationale for this "informant's privilege" was well-stated by Justice Corrigan in State v. Roe
(1971), 26 Ohio St.2d 243, 246 [55 O.O.2d 480]:
"* * * The purpose of the privilege is the furtherance and protection of the public in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation." See Roviaro v. United States (1957),353 U.S. 53, 59.
State v. Williams (1983), 4 Ohio St.3d 74, 75-76.
 {¶ 43} The weight of the competing interests, however, differs in a suppression hearing as compared with a trial. As the Fourth Appellate District in Parsons explained, however,
"* * * the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. * * * Furthermore, although the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to berelevant and helpful to the defense, Roviaro v. United States,353 U.S. 53, 60-61 [77 S.Ct. 623, 627-28, 1 L.Ed.2d 639, 645
(1957)], * * * it has never been held to require the disclosure of an informant's identity at a suppression hearing. McCray v.Illinois (1967), 386 U.S. 300 [87 S.Ct. 1056, 18 L.Ed.2d 62
(1967)]. * * * We conclude that the process due at a suppressionhearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." (Emphasis added.)
Parsons, supra, at 68, quoting United States v. Raddatz
(1980), 447 U.S. 667, 679. See also State v. Payne, Lake App. No. 2004-L-118, 2005-Ohio-7043, ¶ 43, in which the Eleventh Appellate District quoted State v. Taylor (1992),82 Ohio App.3d 434:
"In a preliminary suppression hearing, where the issue for determination is not guilt or innocence but probable cause to issue a warrant, the desire to test the credibility and reliability of an informer who has been vouched for by the police is not a consideration that warrants disclosure. McCray v.Illinois (1967), 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62
* * *; State v. Beck (1963), 175 Ohio St. 73, 191 N.E.2d 825
* * *, reversed on other grounds (1964), 379 U.S. 89, 85 S.Ct. 223,13 L.Ed. 2d 142 * * *. The issue there is the good faith * * * of the police in reasonably relying on the informer's information, and the identity of the informer or [his] testimony is not relevant to that determination." Id. at 446-447." (Parallel citations omitted in original.)
In the case at bar, defendant has not demonstrated the relevance of the identity of the confidential informant to the issues at the suppression hearing. For that reason, and following the analysis in Parsons, Raddatz, and Payne, we find that the trial court did not err in preventing defense counsel from eliciting the identity of the confidential informant. Accordingly, this assignment of error is overruled.
For his eighth assignment of error, defendant states:
VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND HIS PLEA MUST BE VACATED BECAUSE THE COURT DID NOT PROPERLY INFORM DEFENDANT CONCERNING THE MANDATORY PERIOD OF POST-RELEASE CONTROL.
 {¶ 44} Defendant claims that his plea was not knowingly made because the trial court failed to inform him at his plea hearing that postrelease control would be part of his sentence.
 {¶ 45} At the plea hearing, the court informed defendant: "by pleading guilty to these offenses which have a mandatory prison term, because they are felonies of the first degree, you would be subject to post-release control for a period of up to five years. * * * Do you understand that?" Tr. 127. The court restated to defendant, "you understand that you would be subject to post-release control for up to 5 years?" Defendant answered that he did. Tr. 128. Defendant argues that the court misstated because it told him he would be subject to up to five years of postrelease control instead telling him that five years of postrelease control was mandatory.
 {¶ 46} This court has held that "the trial court's failure to advise a defendant at the plea hearing regarding the mandatory nature of his post-release control, requires a vacating of the plea." State v. Holloway, Cuyahoga App. Nos. 86426 86427,2006-Ohio-2591, ¶ 17. The reason the court is mandated to include postrelease control in any plea hearing is to inform the defendant of the maximum penalty to which he could be exposed: "it is clear that post-release control constitutes a portion of the maximum penalty involved in an offense for which a prison term will be imposed. Without an adequate explanation of post-release control from the trial court, appellant could not fully understand the consequences of his plea as required by Crim.R. 11(C)." State v. Calvillo (1991), 76 Ohio App.3d 714,603 N.E.2d 325." State v. Jones (May 24, 2001), Cuyahoga App. No. 77657, 2001 Ohio App. LEXIS 2330, *5. Failure to include this information at a plea hearing invalidates the plea and requires the appellate court to vacate the conviction. Id.
 {¶ 47} In the case at bar, however, the court did inform defendant that his postrelease control was mandatory. It stated at the plea hearing: "So by pleading guilty to these offenseswhich have a mandatory prison term, because they are felonies of the first degree, you would be subject to post-release control for a period of time of up to 5 years. We just verified that with both your counsel and the State of Ohio. Do you understand that?" (Emphasis added.) Tr. at 127. In Holloway, defendant "was, in fact, subject to a mandatory five-year period of post-release control because his convictions included first-degree felonies. Therefore, although the trial court correctly advised Holloway of the five-year period, it failed to advise him it was mandatory." Id. ¶ 16. Here, the court correctly stated that the postrelease control was mandatory, and that the maximum term was five years, but it implied that the term of postrelease control could be less, by stating the term was "up to five years."
 {¶ 48} The Ohio Supreme Court has held that "the court's lack of notification about postrelease control at the plea hearingcould in some instances form a basis to vacate a plea * * *."State v. Jordan (2004), 104 Ohio St.3d 21, ¶ 28, Emphasis added. Because the purpose of informing a defendant about postrelease control as part of his sentence is to notify him of the maximum sentence to which he could be exposed, and because defendant in the case at bar was adequately so notified, the trial court did not err by including the words "up to" in describing postrelease control to defendant at his plea hearing. Accordingly, this assignment of error is overruled.
 {¶ 49} For his ninth assignment of error, defendant states:
IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT PROPERLY ADVISE DEFENDANT CONCERNING COMPULSORY PROCESS.
 {¶ 50} Defendant claims that the trial court failed to inform him at his plea hearing that he had the right to compel witnesses to testify. Defendant quotes the trial court as telling him "[d]o you understand that you have the right to subpoena witnesses to appear and testify on your behalf?" Tr. 124. Defendant then quotes case law which states that a court must "`inform a defendant that it has the power to force, compel, subpoena, or otherwise cause a witness to appear and testify on the defendant's behalf.'" Appellant's Brief at 24. State v.Cummings, Cuyahoga App. No. 83759, 2004-Ohio-4470, citing Statev. Wilson, Cuyahoga App. No. 82770, 2004-Ohio-449. Crim.R. 11 states in pertinent part:
(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
* * *
(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights * * * to have compulsory process for obtaining witnesses in the defendant's favor * * *.
 {¶ 51} This court has held that "[w]e believe that informing a defendant that he had the right to subpoena a witness is tantamount to informing a defendant that a witness so subpoenaed is compelled to appear at trial. We believe the average person understands the word "subpoena" to mean that the authority of the court stands behind the order to appear in a judicial proceeding." State v. Huff (May 8, 1997), Cuyahoga App. No. 70996, 1997 Ohio App. LEXIS 1879, at * 4-5.
 {¶ 52} At the plea hearing, the trial court asked defendant: "Do you understand that you have the right to subpoena witnesses to appear and testify on your behalf?" Tr. 124. Defendant responded, "Yes." Tr. 124. The trial court fulfilled the requirements of Crim.R. 11 concerning defendant's right to compulsory process. Accordingly, this assignment of error is overruled.
 {¶ 53} For his tenth and eleventh assignments of error, defendant states:
X. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS SENTENCED TO MORE THAN A MINIMUM SENTENCE.
XI. DEFENDANT WAS DENIED HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS WHEN HE WAS SENTENCE [sic] BASED ON FACTS FOUND BY THE COURT WHICH WERE NOT ALLEGED IN THE INDICTMENT NOR ADMITTED BY THE DEFENDANT.
 {¶ 54} Defendant claims that the trial court erred when it sentenced him to more than the minimum sentence without making the requisite findings under R.C. 2929.14. He also claims that the court relied on what was not in evidence and would not have gone before a jury when it sentenced him to nine years on each of the first degree felony counts, in violation of Blakely v.Washington (2004), 542 U.S. 296.
 {¶ 55} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court reviewed the Ohio sentencing law in light of the United States Supreme Court's ruling in Blakely. InFoster, the Ohio Supreme Court held that several provisions of S.B. 2, including R.C. 2929.14(B), specifying the findings required to impose greater than the minimum sentence, are unconstitutional. The Court explained: "The following sections, because they either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B) * * *." Id. ¶ 97. As a result, the trial court is no longer obligated to give findings prior to imposing greater than the minimum sentence. The Ohio Supreme Court further held:
The following sections, because they either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety * * *.
[Cases] pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. * * *
Foster, ¶¶ 97, 104.
 {¶ 56} In accordance with Foster, we vacate defendant's sentence and remand for resentencing. We note, however, the Ohio Supreme Court's clarification in State v. Mathis (2006),109 Ohio St.3d 54:
Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself.
Id., ¶ 38.
 {¶ 57} Accordingly, the tenth and eleventh assignments of error are sustained.
 {¶ 58} For his twelfth assignment of error, defendant states:
XII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO INFORM DEFENDANT AT SENTENCING CONCERNING POST-RELEASE CONTROL.
 {¶ 59} Defendant claims that the trial court did not inform him at his sentencing hearing that postrelease control was mandatory in his sentence. The state concedes that the court failed to ensure that defendant knew that the postrelease control was mandatory rather than merely possible. The Ohio Supreme Court ruled in State v. Jordan that vacating the sentence and remanding the case for resentencing is the proper remedy when the trial court has failed at the sentencing hearing to notify a defendant that postrelease control is part of his sentence:
while the court's lack of notification about postrelease control at the plea hearing could in some instances form a basis to vacate a plea, it cannot and does not form the basis to modify a sentence — or a portion thereof — imposed by a trial judge not in conformity with the law. As we have decided, when a trial court fails to properly discharge its statutory duty with respect to postrelease control notification, the sentence must be vacated and the matter remanded for resentencing.
Jordan, supra at ¶ 28.
 {¶ 60} The sentence is vacated and the case remanded for resentencing, additionally, in order for the court to inform defendant of the mandatory nature of the postrelease control portion of his sentence. For his thirteenth assignment of error, defendant states:
XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF THE SALE OF HEROIN.
 {¶ 61} Defendant claims that the indictment did not contain sufficient evidence to support the court's determination in his "no contest" plea that he was indeed guilty of offering to sell heroin. The indictment specifies heroin "equal to or exceeding fifty grams but less than two hundred fifty [sic] grams." In his argument under this assignment of error defendant never discusses the heroin involved in the case. Rather, his only statement concerning the drugs he allegedly offered to sell is the following: "Since there was only one (1) rock that constituted.34 grams this could not constitute an offer to sell in excess of 100 grams." Appellant's Brief at 31-32, emphasis in original. Defendant was indicted on attempted sale of heroin, however, not any rock form of drug. Defendant has thus failed to argue the facts in the case at bar.
 {¶ 62} As previously noted, App.R. 16(A)(7) requires an appellant to reference the specific portions of the record to support his argument. Defendant cites only to the court's statement that it would consider the evidence produced at the suppression hearing to decide its ruling on his no contest plea. Defendant's failure to correctly cite facts from the case at bar precludes any obligation for this court to consider this assignment of error. His oblique reference to one rock of .34 grams has no bearing on his conviction for offering to sell heroin. Accordingly, this assignment of error is overruled.
Judgment affirmed, sentence vacated, and case remanded for resentencing.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and McMonagle, Concur.
[1] The substance of this quote matches the transcript of the tape recording submitted by defendant. Defendant's version reads: "What did you say I'm charged with?"